James A. Hunter (JH-1910)
HUNTER & KMIEC
255 West 94th Street, No. 10M
New York, New York  10025
Tel:     (646) 666-0122
Fax:     (646) 462-3356
E-Mail: hunter@hunterkmiec.com

*Attorneys for Plaintiff Donna Ann*
    *Gabriele Chechele*

Daniel E. Doherty, Esq. (*pro hac* motion
    to be filed)
LAW OFFICES OF DANIEL E.
    DOHERTY
7300 West 110th Street, Suite 930
Overland Park, Kansas  66210
Tel:     (913) 338-7182
Fax:     (913) 338-7164
E-Mail: ded-law@ddoherty.net

*Attorney for Plaintiff Revive*
    *Investing, LLC*

Miriam Tauber (MT-1979)
MIRIAM TAUBER LAW PLLC
885 Park Ave, #2A
New York, New York  10075
Tel:     (323) 790-4881
E-Mail: MiriamTauberLaw@gmail.com

*Attorney for Plaintiff Mark Rubenstein*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DONNA ANN GABRIELE CHECHELE, MARK RUBENSTEIN, and REVIVE INVESTING, LLC,<br><br>Plaintiffs,<br><br>– v. –<br><br>PIERRE LAUBIES,<br><br>Defendant,<br><br>– and –<br><br>COTY INC.,<br><br>Nominal Defendant. | ECF CASE<br><br>No. 20-cv-3438<br><br>COMPLAINT FOR RECOVERY OF SHORT-SWING PROFIT UNDER 15 U.S.C. § 78p(b)<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Donna Ann Gabriele Chechele, Mark Rubenstein, and Revive Investing, LLC (collectively, "Plaintiffs"), by their undersigned attorneys, plead for their complaint as follows:

## INTRODUCTION

1.        This is an action for disgorgement under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

2.        Section 16 is the "original and only express 'insider' trading provision[]" of the Act.  Richard W. Jennings et al., Securities Regulation: Cases and Materials 1202 (8th ed. 1998).  It works to "prevent[] the unfair use of information that may have been obtained by [an insider] by reason of his relationship to the issuer."  *Id.* § 78p(a).

3.        The statute applies to the directors and officers of every issuer of a class of publicly traded equity securities.  *Id.* § 78p(a), (b).  It also applies to every beneficial owner of more than 10% of any such class.  *Id.*  Under Section 16(b), these "insiders" must disgorge to the issuer any profit they realize from a purchase and sale, or a sale and purchase, of the issuer's equity securities occurring within a period of less than six months.  *Id.* § 78p(b).  If an insider fails to disgorge this "short-swing" profit, the statute empowers the issuer, or "the owner of any security of the issuer," to bring suit to recover it.  *Id.*

4.        Liability under Section 16(b) is strict.  The profit from a short-swing transaction must be disgorged "irrespective of any intention on the part of [the insider] in entering into such transaction."  *Id.*  Recovery never depends on proof of

scienter, a breach of duty, or the actual misuse of inside information.  *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).

5.      Plaintiffs, three stockholders of Nominal Defendant Coty Inc. ("Coty"), bring this suit against Coty's outgoing chief executive officer, Defendant Pierre Laubies ("Laubies").  While subject to Section 16 of the Act, Laubies realized hundreds of thousands of dollars in short-swing profit from his purchase and sale of Coty's Class A common stock.  Under Section 16(b), this profit is now Coty's lawful property, which Laubies is strictly liable to account for and repay.

## JURISDICTION AND VENUE

6.      Jurisdiction is conferred on this Court by Section 27 of the Act, 15 U.S.C. § 78aa, and by 28 U.S.C. § 1331.

7.      Venue lies in this District under Section 27 of the Act and 28 U.S.C. § 1401 (a) because Coty is found in and transacts significant business in this District, maintaining its principal executive office, and multiple retail outlets, in the County of New York; and (b) because the transaction described in paragraph 16 below was executed through the facilities of the New York Stock Exchange LLC, a national securities exchange registered under Section 6 of the Act, 15 U.S.C. § 78f, and located in this District.

## THE PARTIES

8.      Plaintiff Donna Ann Gabriele Chechele is a natural person, a resident of the State of New Jersey, and a stockholder of Coty.

9.      Plaintiff Mark Rubenstein is a natural person, a resident of the State of Rhode Island, and a stockholder of Coty.

10.     Plaintiff Revive Investing, LLC is a limited liability company formed under the law of the State of Texas with a principal place of business located in Georgetown, Texas.

11.     Defendant Pierre Laubies is a natural person and a resident of the State of New York.

12.     Nominal Defendant Coty Inc. is a corporation formed under the law of the State of New York with a principal place of business located in New York, New York.  This action is brought in the right and for the benefit of Coty, which is named as a nominal defendant solely to ensure that all necessary parties are before the Court.

## FACTS

### Background

13.     Coty is a publicly traded beauty company with a stable of more than 75 owned or licensed brands, including such household names as Clairol, CoverGirl, and Max Factor.

14.     At all relevant times, Coty's Class A common stock has been registered under Section 12 of the Act, 15 U.S.C. § 78*l*, and listed for trading on the New York Stock Exchange.

15.     Laubies has served as Coty's chief executive officer and as a member of its board of directors continuously since joining the company in November 2018.

### Laubies's Purchase

16.     On August 30, 2019, Laubies purchased 262,000 shares of Coty's Class A common stock on the open market at the price of $9.5418 per share.

17.     Laubies reported his purchase on a Statement of Changes in Beneficial Ownership on Form 4 filed with the SEC on September 4, 2019.

**Laubies's Sale**

18.     On February 27, 2020, Laubies resigned from Coty's board of directors and his position as its chief executive officer.  The resignation was not effective immediately.  The board resignation takes effect on May 31, 2020, while his resignation as an officer is expected to take effect by the summer of 2020.

19.     In anticipation of his departure, Laubies resolved to liquidate his entire equity stake in Coty, including all 3,260,329 of his shares of Coty's Class A common stock.

20.     On February 27, 2020, the same day his resignation was delivered, Laubies entered into a stock purchase agreement (the "Stock Purchase Agreement") with Cottage Holdco B.V. ("Cottage Holdco"), Coty's controlling stockholder.

21.     The Stock Purchase Agreement obligated Laubies to sell 3,260,329 shares of Coty's Class A common stock to Cottage Holdco at a price of $11.4937 per share.

22.     The agreement derived this price from the dollar volume-weighted average price of Coty's publicly traded Class A common stock on the New York Stock Exchange during the 15 consecutive trading days ending on February 26, 2020.

23.     The parties to the Stock Purchase Agreement relied on this formula to set their price because they viewed the contemporaneous market price of Coty's Class A common stock as the best proxy for the value of Laubies's shares.

**The Relevant Disclosure**

24.     Laubies disclosed his sale pursuant to the Stock Purchase Agreement in a Statement of Changes in Beneficial Ownership on Form 4 filed with the SEC on March 2, 2020.

25.     The Form 4 reported Laubies's sale with a transaction date of February 27, 2020, and included the following disclosure: "On February 27, 2020, Cottage Holdco B.V. and Pierre Laubies entered into a stock purchase agreement pursuant to which Mr. Laubies agreed to sell, and Cottage Holdco B.V. agreed to purchase, 3,260,329 shares of Common Stock held by Mr. Laubies."

26.     Cottage Holdco separately disclosed the Stock Purchase Agreement in its own Statement of Changes in Beneficial Ownership on Form 4 filed with the SEC on March 2, 2020.

27.     The Form 4 filed by Cottage Holdco reported a purchase with a transaction date of February 27, 2020, and included the following disclosure: "On February 27, 2020, Cottage Holdco B.V. and Pierre Laubies entered into a stock purchase agreement pursuant to which Mr. Laubies agreed to sell, and Cottage Holdco B.V. agreed to purchase, 3,260,329 shares of Class A Common Stock held by Mr. Laubies."

28.     In short, the parties to the Stock Purchase Agreement were unanimous, unwavering, and unambiguous in reporting that they had entered into their contract on February 27, 2020.

**Plaintiffs' Demands**
**and the Revised Disclosure**

29.     By separate letters of March 2, 2020, Plaintiffs made demand on Coty through their undersigned counsel for recovery of the short-swing profit realized by

Laubies from his transactions in the Company's Class A common stock in August 2019 and February 2020.

30.     Coty received Plaintiffs' demands and forwarded copies of them to Laubies or his legal counsel.

31.     In response to these demands, Laubies contrived to amend his earlier disclosure of the Stock Purchase Agreement.

32.     An amended Form 4, filed by Laubies on March 16, 2020, revised the date of the Stock Purchase Agreement from February 27 to March 12 and included the following disclosure: "The original Form 4 filed on March 2, 2020 is hereby amended by this Form 4/A to correct the transaction reported in Table I. . . .  This Form 4/A reflects that the Stock Purchase Agreement (as defined in this Form 4/A) was entered into on March 12, 2020."

33.     The amended Form 4 Laubies filed on March 16, 2020, did not revise the price or any other terms of the sale originally disclosed on March 2, 2020.  The transaction date was the only term changed.

34.     Within minutes of the filing of Laubies's amendment, Cottage Holdco filed a parallel amendment to its own Form 4 originally filed on March 2, 2020. Cottage Holdco's amendment revised the sale date of the Stock Purchase Agreement in lockstep with Laubies's amendment and included the following disclosure: "The original Form 4 filed on March 2, 2020 is hereby amended and restated by this Form 4/A.  This Form 4/A reflects . . . that the Stock Purchase Agreement (as defined in this Form 4/A) was entered into on March 12, 2020."

35.     These revisions were convenient for Laubies.  By bumping the Stock Purchase Agreement back from February 27 to March 12, the amendments had the effect of placing his sale of 3,260,329 shares more than six months outside his August 2019 purchase.  As a result, the two transactions could no longer be "matched" under Section 16(b) of the Act, and a liability of more than $500,000 was scotched.

**Plaintiffs' Further Investigation**

36.     When confronted about the amendments, Coty's legal counsel explained that the Stock Purchase Agreement had not been fully executed until March 2020.  According to Coty, Laubies had simply overlooked signing the agreement in February.

37.     Plaintiffs' counsel pointed out the implausibility of this explanation in light of the two Forms 4 originally filed on March 2, 2020.  It seemed unlikely that not one but both counterparties to the Stock Purchase Agreement would have reported "enter[ing] into" the agreement "[o]n February 27, 2020" when one of them had not signed it until March.

38.     After further discussion with his client, Coty's counsel returned with news that Laubies's unsigned counterpart had not been overlooked after all.  Instead, Laubies had deliberately withheld it for two weeks because he was unhappy with the draft terms of a tax indemnity Cottage Holdco had negotiated.

39.     According to this account, Laubies had not forgotten to sign the agreement; he just did not want to.

40.     This explanation was even more implausible than the first.  While it seemed unlikely that both parties to the Stock Purchase Agreement would overlook an

unsigned counterpart, it beggared belief that they would mistake the agreement as fully executed when they were still negotiating it.

41.     Coty also could not adequately explain why Cottage Holdco made no effort to renegotiate the sale price for Laubies's stock when the parties were still dickering over terms as late as March 12, 2020.  Even though the agreement was supposedly signed on March 12, it still valued the shares based on their market price over the 15 trading days ending on February 26.

42.     The outdated pricing formula had a big impact on the parties' bottom lines, since the COVID-19 market crash had battered Coty's stock, leaving it at just $6.30 per share on March 12, 2020 — well below its closing price on February 26.

43.     Given that over 7 million shares changed hands on March 12 at prices that never cleared $7.00, it seems odd that Cottage Holdco decided to settle for buying Laubies's 3,260,329 shares at $11.4937 per share — a market premium of more than 60%.  It is especially odd since the whole point of the Stock Purchase Agreement's pricing formula was to key the sale price to the stock's contemporaneous market value.

44.     Had Cottage Holdco simply insisted on recalculating the sale price over the 15 trading days ending on March 11 rather than February 26, it would have saved millions of dollars.  Based on the stock's daily volume and closing prices during the later period, Plaintiffs estimate that the dollar volume-weighted average price would have dropped from $11.4937 per share to less than $9.50 per share.

45.     That reduction would have knocked more than $6 million off the total price Cottage Holdco paid for Laubies's shares.

46.     Plaintiffs submit that Cottage Holdco did not bargain for this

commonsensical reduction because it couldn't.  Its hands were tied because the parties to

the Stock Purchase Agreement considered themselves bound to its terms on February 27,

2020.

47.     The truth is that the parties got it right the first time: Laubies and

Cottage Holdco entered into the Stock Purchase Agreement on February 27, 2020.  The

disclosure in the original Forms 4 was correct, while the later amendments were more

wishful than factful.  And with a sale date of February 27, 2020, Laubies realized a short-

swing profit of more than $500,000 as alleged in Plaintiffs' demands.

48.     Sixty days have now passed since those demands were made, yet

no action has been commenced to prosecute their claims.  Further delay would be a futile

gesture, Coty having unequivocally notified Plaintiffs' counsel that it does not intend to

take action to recover Laubies's short-swing profit.

**SOLE CLAIM FOR RELIEF:**
**DISGORGEMENT UNDER 15 U.S.C. § 78p(b)**
**(AGAINST DEFENDANT PIERRE LAUBIES)**

49.     Plaintiffs reallege and incorporate by reference the allegations in

paragraphs 1-48 above.

50.     Section 16(b) of the Securities Exchange Act of 1934, as amended,

reads in pertinent part as follows:

> For the purpose of preventing the unfair use of information which
> may have been obtained by [a 10 percent] beneficial owner,
> director, or officer by reason of his relationship to the issuer, any
> profit realized by him from any purchase and sale, or any sale and
> purchase, of any equity security of such issuer (other than an
> exempted security) or a security-based swap agreement involving
> any such equity security within any period of less than six months,
> unless such security or security-based swap agreement was

acquired in good faith in connection with a debt previously
contracted, shall inure to and be recoverable by the issuer,
irrespective of any intention on the part of such beneficial owner,
director, or officer in entering into such transaction of holding the
security or security-based swap agreement purchased or of not
repurchasing the security or security-based swap agreement sold
for a period exceeding six months.  Suit to recover such profit may
be instituted at law or in equity in any court of competent
jurisdiction by the issuer, or by the owner of any security of the
issuer in the name and in behalf of the issuer if the issuer shall fail
or refuse to bring such suit within sixty days after request or shall
fail diligently to prosecute the same thereafter; but no such suit
shall be brought more than two years after the date such profit was
realized.

15 U.S.C. § 78p(b).

51.     At all relevant times, Laubies was an officer and director of Coty
and, accordingly, was subject to Section 16 of the Act.

52.     While subject to Section 16 of the Act, Laubies purchased
262,000 shares of Coty's Class A common stock at the price of $9.5418 per share as
further described herein.

53.     While subject to Section 16 of the Act, Laubies sold
3,260,329 shares of Coty's Class A common stock at the price of $11.4937 per share as
further described herein.

54.     The sale described in paragraph 53 above occurred within less than
six months of the purchase described in paragraph 52 above.

55.     The sale described in paragraph 53 above was made at a higher
price than the purchase described in paragraph 52 above.

56.     Laubies had a direct or indirect pecuniary interest in all of the
shares of Coty's Class A common stock purchased and sold as described in
paragraphs 52-53 above.

57.     Under the "lowest-in, highest-out" method for computing realized profit pursuant to Section 16(b) of the Act, Laubies realized a profit of $511,397.80, more or less, from the transactions described in paragraphs 52-53 above.

58.     Under Section 16(b) of the Act, the profit realized by Laubies as described in paragraph 57 above inured to Coty and remains Coty's lawful property, recoverable by Plaintiffs in its stead, Coty having failed to seek recovery of the same despite Plaintiffs' due and timely demands.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all questions so triable.

[*prayer for relief follows on next page*]

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray this Court for judgment:

(a)     Requiring Defendant Pierre Laubies to account for and pay over to Coty

the short-swing profit realized and retained by him in violation of

Section 16(b) of the Act in an amount not less than $511,397.80, together

with appropriate pre- and post-judgment interest and the costs of this suit;

(b)     Awarding Plaintiffs their costs and disbursements including reasonable

attorney's, accountant's, and expert witness fees; and

(c)     Granting Plaintiffs such further relief as the Court deems just and proper.


Dated:  May 2, 2020
        New York, New York


/s/ James A. Hunter                              /s/ Miriam Tauber

James A. Hunter (JH-1910)                        Miriam Tauber (MT-1979)
HUNTER & KMIEC                                   MIRIAM TAUBER LAW PLLC
255 West 94th Street, No. 10M                    885 Park Ave, #2A
New York, New York  10025                        New York, New York  10075
Tel:     (646) 666-0122                          Tel:     (323) 790-4881
E-Mail: hunter@hunterkmiec.com                   E-Mail: MiriamTauberLaw@gmail.com

*Attorneys for Plaintiff Donna Ann*              *Attorney for Plaintiff Mark Rubenstein*
   *Gabriele Chechele*


/s/ Daniel E. Doherty

Daniel E. Doherty, Esq. (*pro hac* motion
   to be filed)
LAW OFFICES OF DANIEL E.
   DOHERTY
7300 West 110th Street, Suite 930
Overland Park, Kansas  66210
Tel:     (913) 338-7182
E-Mail: ded-law@ddoherty.net

*Attorney for Plaintiff Revive*
   *Investing, LLC*